# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHRIS MURRAY,

    Plaintiff,

v.

MR. RICKY FOXWELL, *Warden - ECI*,
LT. EVAN WARD,
SGT. JASON WALLACE and
KEITH SCHAFFER, *C.O. II*,

    Defendants.

Civil Action No. TDC-16-4141

## MEMORANDUM OPINION

Plaintiff Chris Murray, an inmate at Western Correctional Institution in Cumberland, Maryland, has filed a civil action against Defendants Ricky Foxwell, Warden of the Eastern Correctional Institution ("ECI") in Westover, Maryland; Lt. Evan Ward, the Institutional Remedy Coordinator at ECI; and ECI correctional officers Sgt. Jason Wallace and Correctional Officer II Keith Schaffer. Murray alleges that Defendants violated his constitutional rights to access the courts, to freedom of speech and expression, and to due process of law by suppressing complaints he filed through the prison's administrative remedy procedure ("ARPs"). He seeks an order directing Defendants to comply with prison policies governing the handling of ARPs.

Pending before the Court are Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions are GRANTED.

## BACKGROUND

Murray was transferred from the Roxbury Correctional Institution to ECI on October 19, 2016. According to Murray, ECI correctional staff improperly handled his ARPs, refused to issue forms for filing ARPs, and told him that they may only issue one ARP form per week. In addition, Murray alleges that correctional staff have obstructed inmates' access to the ARP process through different forms of retaliation, including verbal and physical harassment, denial of recreation and programs, and transfer from one unit, compound, or institution to another. He claims that staff at ECI "negligently or deliberately misplaced or stole 100 postage stamps along with approximately $45.00 worth of commissary food items" from his personal property and that his television had been broken, "as if someone tried to pr[y] it open deliberately and maliciously." Mot. Am. Pet'n 9, ECF No. 33.

Specifically, Murray claims that on October 22, 2016, he gave Officer Schaffer three completed ARP forms and asked him to sign them and to issue him the carbon copies, but Officer Schaffer refused to do so. On October 23, 2016, Murray again saw Officer Schaffer and repeated his request for copies but was told that the ARPs had been forwarded to Sgt. Wallace for processing. Murray then approached another correctional officer, who told Murray that carbon copies are not issued until it has been determined whether the matter can be resolved informally. According to Murray, the officer explained that at ECI, the inmate would receive a carbon copy of a submitted ARP only if the matter remained unresolved after investigation.

On October 25, 2016, having not yet received the carbon copies, Murray submitted another ARP, complaining about "the 'arbitrary' action of the ECI staff" and how the staff had infringed on his rights. Compl. 3, ECF No. 3. Between October 27, 2016 and December 15, 2016, Murray sent correspondence to several correctional and government officials, as well as non-profit

organizations, requesting intervention and an investigation of ECI's handling of ARPs. On November 22, 2016, Murray submitted two ARPs to Sgt. Wallace, who stated that he would forward them to a lieutenant. Murray states that he never received carbon copies or responses to any of the ARPs he submitted.

On December 21, 2016, Murray was summoned to meet with ECI's ARP Coordinator Lt. Ward and another lieutenant, who explained to him the process by which ECI handles ARPs. At that time, Murray told Lt. Ward that ECI correctional officers, including Officer Schaffer and Sgt. Wallace, had accepted his ARPs but refused to provide the requested carbon copies. The lieutenants informed Murray that ECI staff were required to attempt to resolve any ARP issues prior to the ARP being submitted. They also advised him to directly submit any other issues with the ARP process to Lt. Ward by using a mailbox in the Housing Unit.

As of August 21, 2017, Murray had filed 24 ARPs at ECI. ARP No. ECI-0670-17, filed by Murray on October 31, 2016, complained about ECI's failure to provide him with carbon copies of his grievances. ARP No. ECI-0670-17 was stamped as received on March 16, 2017, approximately one month after Murray filed the Complaint in this case. An assigned ARP investigator interviewed Murray on March 24, 2017 and concluded that Murray was unable to provide any details to support his claim. The investigator noted that Murray could not provide the time of day when he filed his initial complaint or what the complaint was about. Murray acknowledged that he did not follow up regarding his "missing" ARP forms and that nobody witnessed the incidents. Defs.' First Mot. Dismiss Ex. 1 at 5, ECF No. 17-3. Because Murray was unable to provide sufficient evidence or any witnesses to substantiate his claims, the investigator found ARP No. ECI-0670-17 to be without merit and subject to dismissal.

The investigative report for ARP No. ECI-0670-17, dated April 28, 2017, included signed statements from each of the four officers listed in the ARP, including Sgt. Wallace and Officer Schaffer. Three of the officers either denied or could not recall receiving ARPs from Murray on the day in question, while one acknowledged that he received an ARP from Murray but returned it to him because it contained multiple issues and thus needed to be revised to raise only a single issue. On May 4, 2017, Warden Foxwell dismissed ARP No. ECI-0670-17 with the following statement:

> Your request for Administrative Remedy has been investigated and is hereby Dismissed: upon review of reports from staff and supporting documentation it has been determined that there is no evidence to substantiate your claim that your access to the courts ha[s] been hampered. Documentation shows that your ARP forms were handled properly in accordance with IB 09-10 "the inmate population will turn in all completed ARP forms to the dayshift OIC [Officer in Charge] for signature. The OIC will issue the inmate the signed copy of the complaint form. The housing unit manager will collect the completed ARP forms from the control center daily. The unit manager will review the ARP complaint and conduct an interview to determine if he/she can resolve the complaint. If it is determined that the complaint cannot be resolved, the unit manager shall forward the complaint to the ARP dept.

*Id.* at 2.

Murray prepared other ARPs dated October 31, 2016 which were not stamped as received by ECI staff. In one of those un-numbered ARPs, Murray complained that Officer Schaffer had denied him ARP forms upon request. Murray later appealed that ARP to the Commissioner of Corrections and then to the Inmate Grievance Office ("IGO"), alleging that the Warden had failed to address his grievance. By letter dated June 30, 2017, an IGO Administrative Officer informed Murray that his grievance was being dismissed. The Administrative Officer concluded that Murray had failed to state a claim meriting administrative relief because ARP forms can be obtained through means other than requesting them from correctional officers, such as obtaining them from the prison library.

4

In another un-numbered ARP dated October 31, 2016, Murray alleged that he was being subjected to retaliation for filing ARPs earlier that week. According to Murray, a correctional officer, Correctional Officer II Johnson, conducted a search of Murray's cell and stated, "This is just a prelude to what lies ahead for people who like to file ARPs." Defs.' First Mot. Dismiss Ex. 3 at 26, ECF No. 17-5. Murray requested an investigation into the matter and asked that Officer Johnson, Sgt. Wallace, and two other correctional officers be held accountable. Murray appealed that un-numbered ARP up to the IGO. By letter dated June 30, 2017, an IGO Administrative Officer dismissed Murray's grievance for failure to state a claim upon which administrative relief could be granted. According to the Administrative Officer, Murray failed to provide any evidence that Officer Johnson made any comments to him "regarding the cell search occurring as a result of [Murray] filing ARPs" or that any correctional staff retaliated against him in any way. *Id.* at 29.

In a declaration, Warden Foxwell has acknowledged that he is familiar with Murray's claims but has stated that he did not hinder, delay, or interfere with Murray's ability to use the ARP process. Warden Foxwell stated that he expects ECI staff to comply with the directives and policies regarding ARPs. When responding to ARPs, he relies on the reports and assessments of the correctional staff.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Specifically, Defendants argue that (1) the Eleventh Amendment to the United States Constitution bars claims against Defendants in their official capacities; (2) the claims against Warden Foxwell in his personal capacity fail because Murray cannot demonstrate that Warden Foxwell is liable under a theory of supervisory liability; (3)

Murray has failed to provide evidence to establish that his First Amendment rights or due process rights have been violated; and (4) Defendants are entitled to qualified immunity from suit.

## I.  Legal Standards

Defendants have entitled their motions as Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When a moving party submits affidavits or other evidence for the Court's consideration on a motion to dismiss, the Court ordinarily may not consider such materials unless the motion is treated as one for summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Here, the notice requirement has been satisfied by the title of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) or

otherwise explain why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Murray has not filed a Rule 56(d) affidavit and instead has submitted his own declarations and exhibits with his memoranda in opposition to the Motions. The Court therefore will construe them as motions for summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motions, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under § 1983. *Id.* at 70.

Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't §12-202(a) (2015), it has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court. Accordingly, Defendants are immune from suit for actions taken in their official capacity.

### III. Warden Foxwell

As to claims against Warden Foxwell in his personal capacity, the Complaint does not allege any acts or omissions by Warden Foxwell. Nor can Warden Foxwell be held liable simply for occupying a supervisory position because vicarious liability does not apply to § 1983 claims. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (recognizing that under § 1983, individual liability must be based on personal conduct). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor has actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's

response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.*; *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

At best, the Complaint and evidence may establish that Warden Foxwell did not respond to one or more of Murray's ARPs. Murray's claim, however, is that correctional officers refused to accept and submit ARPs, such that Warden Foxwell would not have received them. To the extent that Warden Foxwell actually received and considered certain ARPs, addressing an inmate's grievance, without more, does not amount to participation in the alleged constitutional violation sufficient to confer liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."). Where the alleged constitutional violations arise from a refusal to accept and process ARPs and alleged retaliation for filing ARPs, there is no evidence that Warden Foxwell was aware of, or participated in these activities. The Court will therefore grant summary judgment in favor of Warden Foxwell.

## IV. First Amendment

Murray's claims that his First Amendment rights have been violated are properly construed as claims that Defendants violated (1) his right of access to courts; and (2) his right to be free from retaliation for filing prison grievances.

### A. Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right, however, is limited to protecting an inmate's right "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their

confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Impairment of the ability to litigate any other matter is considered an incidental consequence of conviction and incarceration and is thus constitutional. *Id.*

A critical requirement of an access-to-courts claim is that a prisoner must show "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Lewis*, 518 U.S. at 352-53 & n.3. The complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Allegations of injury arising from the denial of access to the courts therefore must be specific and articulate how the litigation was harmed. *See, e.g., Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002) (holding that an allegation that the failure to transport a prisoner's legal documents to his prison caused his unspecified "open case" to be "set back" did not state a claim of actual injury from a denial of access to courts); *see also Johnson v. Hamilton*, 452 F.3d 967, 973-74 (8th Cir. 2006) (dismissing an access-to-courts claim arising from the alleged destruction of the prisoner's legal papers because there were no allegation of facts supporting a finding of injury or prejudice). *Cody v. Weber*, 256 F.3d 764, 769-70 (8th Cir. 2001) (holding that lack of access to computer disks containing the prisoner's legal materials did not establish a denial of access to courts because the vague allegation that the stored data would "set him free" was insufficient to establish actual injury).

Here, Murray claims that he has been denied access to the courts because Defendants failed to give him forms for filing ARPs, they did not give him the carbon copies of ARPs that he did file, and, in some instances, they did not process his filed ARPs. In theory, the thwarting of the ARP process could support an access-to-courts claim. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (2012), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* Because failure to complete the requirements of the ARP would result in dismissal of any federal court claim alleging unconstitutional conditions of confinement, *see Anderson v. XYZ Correctional Health Serv's., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005), interference with the ability to complete the ARP process could be the denial of one of the "tools" required to litigate conditions of confinement in court. *See Lewis*, 518 U.S. at 355 (stating that a denial of access to courts can be premised on denying the "tools" required to challenge conditions of confinement).

Murray's claim, however, fails because he has never identified any "nonfrivolous" or "arguable" claim that was frustrated, or that any actual injury resulted from the loss of such a claim. For all of his allegations about deficiencies in the ARP process, Murray has never sufficiently identified or articulated a substantive claim underlying any of the ARPs he submitted, or failed to submit because of Defendants' actions, that would allow for an assessment of whether it was a "nonfrivolous" or arguably meritorious claim that his conditions of confinement are unconstitutional. *Christopher*, 536 U.S. at 415. By failing to do so, Murray cannot establish any "actual injury," in that any particular relief would have been awarded by a court had the claim been allowed to proceed, as required to prevail on an access-to-courts claim. *See O'Dell*, 112 F.

3d at 776. Because Murray's claim fails as a matter of law, the Court will grant summary judgment to Defendants on the access-to-courts claim.

However, the Court finds it noteworthy that the record establishes that ARPs submitted by Murray in October 2016 were not processed or investigated until March 2017 or later, and only *after* Murray filed his Complaint in this Court in February 2017. It should not take the filing a federal case for a prison to process properly an ARP submitted by a prisoner, frivolous or not. Such delays, particularly to the extent they may have been intentional or part of a misguided notion that prisons need not process ARPs until after they have been investigated, must be addressed and resolved by ECI.

### B. Retaliation

Murray also alleges that Defendants retaliated against him for filing ARPs. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Consistent with this principle, the United States Court of Appeals for the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017). In doing so, the Fourth Circuit rejected a claim of qualified immunity based on the conclusion that a prisoner's First Amendment right to be free from retaliation for filing a grievance was clearly established based on the consensus of case law pre-dating the events in this case. *See Booker*, 855 F.3d at 544-45. Thus, Murray has a clearly established First Amendment right to be free from

retaliation for filing grievances, and Defendants are not entitled to qualified immunity on that claim.

In order to succeed on a First Amendment retaliation claim under § 1983, Murray must prove that (1) he engaged in a constitutionally protected First Amendment activity, (2) a defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Suarez Corp.*, 202 F.3d at 686.

Here, although Murray claims that correctional staff at ECI retaliated against him for filing ARPs, he details only a single incident of alleged retaliation by a specific correctional official. Murray alleges that Officer Johnson conducted a search of Murray's cell, broke Murray's radio in the process, and stated, "This is just a prelude to what lies ahead for people who like to file ARPs." *See* Compl. 4; Defs.' First Mot. Dismiss Ex. 3 at 26; Pl.'s Opp'n First Mot. Dismiss 19, ECF No. 28. Officer Johnson, however, is not a Defendant in this case. Although Murray, with leave of the Court, filed an Amended Complaint on December 15, 2017 in which he added several new Defendants, he did not include Officer Johnson. Murray's general allegations that his television was broken and his postage stamps and commissary items were taken are not linked to any of the named Defendants, and he has provided no evidence to show that they were responsible for that misconduct. As discussed above, because vicarious liability is not available in § 1983 cases, Defendants in this case cannot be held liable for these incidents absent personal involvement. *See Wright*, 766 F.2d at 850. Because Murray has not established a viable First Amendment retaliation claim against any of the named Defendants, the Court will grant summary judgment to Defendants on this claim.

## V.     Due Process

Murray also complains that the interference with his submission of ARPs has denied him due process of law. Although Murray asserts that Defendants violated prison policies and procedures relating to the processing of ARPs, violations of state laws or regulations do not establish a basis for a federal procedural due process claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990). Likewise, the failure to follow prison directives or regulations does not, in and of itself, establish a violation of due process. *See Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

Even where a state has created internal prison procedures, the procedural protections of the Due Process Clause apply only to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits, *see Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993), or otherwise lengthen the amount of time an inmate must serve, *see Montanye v. Haymes*, 427 U.S. 236, 242 (1976), as well as those that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," such as transfer to a mental institution or involuntary administration of medication, *see Sandin v. Conner*, 515 U.S. 472, 477–78, 483–84 (1995). Murray's allegations that Defendants hindered his access to the ARP process do not meet these standards. Therefore, the Court will grant summary judgment to Defendants on this claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: February 12, 2019

THEODORE D. CHUANG
United States District Judge